## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BAD GREMLIN LLC, REMORA VENTURES LLC, PATRICK BUCK, THOMAS BUCK, NANCY BEAUMONT, NOVEMBER ACQUISITIONS SPV LLC, and DECEMBER ACQUISITIONS SPV LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  1:22-cv-11000 |
| v. | ) ) ) | |
| SEAN GRUSD, | ) ) | |
| Defendant. | ) ) | |

## <u>VERIFIED COMPLAINT</u>

Plaintiffs Bad Gremlin LLC ("Bad Gremlin"), Remora Ventures LLC ("Remora"),
Patrick Buck, Thomas Buck, and Nancy Beaumont (collectively "Member Plaintiffs"), in
addition to Plaintiffs November Acquisitions SPV LLC ("November Acquisitions"), and
December Acquisitions SPV LLC ("December Acquisitions") (collectively "Company
Plaintiffs"), sue Defendant Sean Grusd ("Grusd" or "Defendant") for violating Section 10(b) of
the Securities Exchange Act (15 U.S.C. §§ 78j(b) and Rule 10b-5 promulgated thereunder by the
SEC, 17 C.F.R. § 240.10b-5); and for common law fraud, breach of contract, breach of fiduciary
duty, and breach of the implied covenant of good faith and fair dealing, as follows:

## <u>INTRODUCTION</u>

1.     This case involves a pattern of fraud as brazen as any committed by Bernie
Madoff or Sam Bankman-Fried.

2.      Defendant Sean Grusd induced Member Plaintiffs to invest tens of millions of dollars into investment funds he controlled, by representing that he owned shares of companies expected to increase in value, which he would transfer to the investment funds.

3.      Once Member Plaintiffs provided the millions of dollars in investments, Grusd sent investor reports, investment statements, stock certificates, and bank statements reflecting that the investment funds owned shares in the underlying companies.

4.      But all of it was fabrication. Grusd never did own shares in the underlying companies and never invested fund money into those companies. Instead, he took the money for himself, and over the course of a year forged reports, stock certificates, contracts for purchase of the stocks, and bank statements to conceal his theft.

5.      Grusd's fraudulent scheme came to light late the week of December 19, 2022, before the long holiday weekend, when Plaintiffs noticed that a bank statement Grusd sent appeared to have been forged.

6.      Plaintiffs called the bank, confirmed the forgery, and confronted Grusd. He confessed to everything. Plaintiffs attempted to resolve this without the need for court action, but Grusd claimed (incredibly) he could not make Plaintiffs whole because the money is gone.

7.      Defendant made misrepresentations and omissions of material facts and engaged in a fraudulent course of business in violation of Section 10(b) of the Securities Exchange Act and the common law, and resulting in damages to Member Plaintiffs for more than $20 million.

8.      Plaintiffs bring this case and ask the Court to prevent Grusd from disposing of or transferring company assets or otherwise purporting to act on behalf of the companies. They also seek a full accounting, compensatory damages, punitive damages, costs and attorneys' fees.

## THE PARTIES

9.     Plaintiff Remora Ventures LLC, is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Remora was created for the purpose investing in Klarna Bank AB ("Klarna") though November Acquisitions.

10.     Plaintiff Bad Gremlin LLC, is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Bad Gremlin was created for the purpose of investing in Stripe Inc. ("Stripe"), through December Acquisitions.

11.     Plaintiff Patrick Buck is an individual who is a citizen of Illinois. Patrick Buck invested individually in December Acquisitions for the purpose of investing in Stripe.

12.     Plaintiff Thomas Buck is an individual who is a citizen of Illinois. Thomas Buck invested individually in December Acquisitions for the purpose of investing in Stripe.

13.     Plaintiff Nancy Beaumont is an individual who is a citizen of Illinois. Beaumont invested individually in December Acquisitions for the purpose of investing in Stripe.

14.     Plaintiff November Acquisitions SPV LLC is a Delaware limited liability company formed on November 17, 2021, with its registered office located at 16192 Coastal Highway, Lewes, Delaware 19958.

15.     Plaintiff December Acquisitions SPV LLC is a Delaware limited liability company formed on December 26, 2021, with its registered office located at 16192 Coastal Highway, Lewes, Delaware 19958.

16.     Defendant Sean Grusd is an individual. He formed November Acquisitions and December Acquisitions, induced Plaintiffs into investing in those LLCs under false pretenses, and acted as Managing Member of both LLCs until December 29, 2022.  Upon information and belief, Grusd is a citizen of Illinois.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

18.     This Court has supplemental jurisdiction over the claims asserted under state law under 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to the forum selection clause agreed to by the parties in the applicable Operating Agreements (attached hereto as Ex. A, November Acquisitions; and Ex. B, December Acquisitions), and Subscription Agreements (attached hereto as Ex. C, Remora; Ex. D, Bad Gremlin; Ex. E, Bad Gremlin; Ex. F, Patrick Buck; Ex. G, Thomas Buck; and Ex. H, Nancy Beaumont).

20.     In connection with the acts alleged in this Complaint, Defendant, directly or indirectly, used the mails and the means and instrumentalities of interstate commerce, including telephonic communications and the Internet.

## FACTUAL BACKGROUND

21.     Plaintiff Patrick Buck was introduced to Grusd in the summer of 2021. Grusd held himself out as having a background and knowledge in technology investments, after having sold a company to Apple and making investments in various other tech investments such as Lemonade and Drizly. Other Member Plaintiffs were introduced to Grusd through Buck.

22.     Grusd's misrepresentations and fraudulent scheme were enacted through two LLCs he formed—November Acquisitions and December Acquisitions (the Company Plaintiffs herein)—which he held out to Member Plaintiffs as having the sole purpose of investing in specific companies—Klarna and Stripe, respectively.

**A.      Grusd creates November Acquisitions to induce certain Member Plaintiffs to invest in Klarna.**

23.      In the fall of 2021 Grusd approached Remora's founding member, John Stafford, III ("Stafford") about the prospect of investing in Klarna and Stripe.

24.      During these initial discussions, Grusd told Stafford by telephone that he owned shares in Klarna and he wanted to sell some of those shares because he was in need of liquidity. The concept Grusd sold Stafford on was this: Grusd would set up an investment fund, Stafford and others would put money into the fund, then Grusd would sell some of his shares in Klarna to that fund. In that way, Grusd would get the liquidity he wanted and Stafford and the other members would, indirectly through the fund, own shares in Klarna.

25.      To further this, Grusd formed November Acquisitions on November 17, 2021 as a "special purpose entity" for the sole purpose of purchasing shares in Klarna, which Grusd had represented to Stafford he owned at that time individually. Namely, November Acquisitions' purpose was "[a]n investment of $50,000,000.00 to purchase Series A shares in Klarna Bank AB. These shares are to be purchased by November Acquisitions SPV LLC on a discounted basis with Klarna currently at a market value of 44 billion; while the acquisition will take place at a 38 billion valuation (~13.63% discount)." (Ex. A, at Ex. B.) According to November Acquisitions' Operating Agreement, members would include Dylan Ventures Group, LLC, D1 Capital Partners L.P., Earl Goldstein, Jared Grusd (Grusd's brother), and Remora. (Ex. A at 3.)

26.      The Operating Agreement further provided that Grusd would manage the operations of and act on behalf of November Acquisitions as its Managing Member.  (Ex. A ¶ 6.01.)

27.      Based on Grusd's representations that he already owned shares in Klarna, and that the purpose of November Acquisitions was to purchase those shares, Remora (through Stafford)

entered a Subscription Agreement with November Acquisitions, under which Remora would invest $10 million in November Acquisitions for the purchase of a membership interest in Klarna. Specifically, the membership interest to be purchased was described as: "On a fifty million dollar valuation basis in the SPV. The shares in Klarna will be purchased at price per share of 60 dollars a share." (Ex. C at Ex. A.)

28.    On the same date, November 26, 2021, Remora wired $10 million dollars to a bank account held by November Acquisitions.

**B.    Grusd creates December Acquisitions to induce certain Member Plaintiffs to invest in Stripe.**

29.    Around this same time, Grusd pitched another investment opportunity to Stafford, this time in Stripe, Inc. Stafford desired to purchase an interest in Stripe, and Grusd represented that he could facilitate that purchase though a second LLC, December Acquisitions, which Grusd formed on December 26, 2021.

30.    Under the terms of its LLC Operating Agreement, December Acquisitions was formed to serve as a special purpose entity for the sole purpose of making an investment in Stripe "on such terms as disclosed to Investors." (Ex. B at 1 and Ex. B.) The Operating Agreement listed Dylan Ventures Group, LLC, and Bad Gremlin LLC as the members, and left the remaining member fields open for unidentified investors. The Operating Agreement likewise provided that Grusd would manage the operations of and act on behalf of December Acquisitions as its Managing Member. (Ex. B, ¶ 6.01.)

31.    Based on Grusd's representations that he was ready and able to purchase shares in Stripe, Bad Gremlin (through Stafford, its founder) entered into a Subscription Agreement with December Acquisitions on February 7, 2022, under which Bad Gremlin would invest $5 million in December Acquisitions for the purchase of a membership interest in Stripe. (Ex. D.)

Specifically, the membership interest to be purchased was described as: "On one hundred million dollar valuation basis in the SPV. The shares in Stripe Inc. will be purchased at a 75 billion valuation." (Ex. D at Ex. A.)

32.    On February 8, 2022, Bad Gremlin wired $5 million dollars to a bank account held by December Acquisitions.

33.    On April 25, 2022, December Acquisitions and Bad Gremlin entered into a second Subscription Agreement, under which Bad Gremlin would invest an additional $5 million in December Acquisitions for the purchase of additional membership interest in Stripe on the same terms as the first agreement. (Ex. E.)

34.    On April 29, 2022, Bad Gremlin wired $5 million dollars to a bank account held by December Acquisitions.

35.    Around the same time, Plaintiffs Patrick Buck, Thomas Buck, and Nancy Beaumont were informed about the Stripe investment opportunity.  Grusd represented to them that he had already purchased more than 2 million shares in Stripe. Based on that representation, Patrick Buck, Thomas Buck, and Nancy Beaumont each entered into a Subscription Agreement with December Acquisitions on May 9, 2022 to invest $300,000 each to purchase a portion of the Stripe shares Grusd represented were already in December Acquisitions' possession. (Exs. F, G, and H.)

36.    An Amended and Restated Operating Agreement for December Acquisitions dated December 15, 2022, lists the Company's members as: Dylan Ventures Group, LLC, Bad Gremlin LLC, D1 Capital Partners L.P., Earl Goldstein, Gabe Goldstein, Kevin Gainer, John Favia, Jan Horcicka, Thomas Buck, Nancy Beaumont, and Patrick Buck. (*See* Ex. I hereto at 3.)

**C.     Grusd lies by telling Member Plaintiffs that he made the investments in Klarna and Stripe and sending falsified documents.**

37.     Following Member Plaintiffs' transfers of millions of dollars into the November Acquisitions and December Acquisitions accounts, Grusd represented to Remora that he had purchased the shares in Klarna, and made oral representations to Bad Gremlin and Patrick Buck that he had purchased the shares in Stripe.

38.     Beyond oral representations, on April 12, 2022, Grusd forwarded email correspondence to Remora that appeared to be from Carta.com representing that on February 5, 2022, he had accepted a CS-38 certificate issued by Klarna Bank to November Acquisitions. Indeed, Grusd provided Remora with a CS-38 Certificate certifying that November Acquisitions was the stockholder of 34,482 "fully paid and non-assessable shares of Common Stock, par value $ 0.00001, of Klarna Bank AB" purchased on November 29, 2021, for fifty million dollars ($50,000,000). (Attached hereto as Ex. J.)

39.     Grusd likewise forwarded email correspondence in April 2022 that appeared to be from Carta.com representing that on February 5, 2022, he had accepted a CS-12 certificate issued by Stripe Inc. to December Acquisitions. Grusd provided Bad Gremlin with what appeared to be a CS-12 Certificate certifying that December Acquisitions was the stockholder of 2,858,000 "fully paid and non-assessable shares of Common Stock, par value $ 0.00001, of Stripe Inc" purchased on January 21, 2022, (before any of the Member Plaintiffs had transferred investment funds to Grusd), for $100 million. (Attached hereto as Ex. K.)

40.     Indeed, under the premise that he had already purchased over 2 million shares in Stripe, in the Winter of 2022, Grusd told the pertinent Member Plaintiffs that he had entered into a Share Purchase Agreement on behalf of December Acquisitions with Karmel Capital

Management LLC ("Karmel") for the purchase of Common Shares of Stripe owned by December Acquisitions.

    a.    Grusd first represented to December Acquisition's members that a Purchase Agreement was entered into with Karmel on April 27, 2022, whereby December Acquisitions was the owner of 214,822 Class B Shares, which it would sell to Karmel for a fixed sum equal to $20 million on or by May 20, 2022.

    b.    He then represented that another Share Purchase Agreement was entered into on June 13, 2022, whereby December Acquisitions was the owner of 2,858,000 Class B Shares of Stripe, Inc. and would sell those shares to Karmel for a fixed sum equal to $266,079,800.00 USD ($93.10/share) on the Closing Date of July 5, 2022. That amount far exceeded the amount invested by Plaintiffs, and was held out as an excellent sale for the members of December Acquisitions.

    c.    On August 15, 2022, Grusd entered an amended Share Purchase Agreement moving the closing date to September 15, 2022.

41.    Throughout this time, however, Grusd represented to Member Plaintiffs that Karmel could not perform its obligations under the contract because it had not secured necessary investments. Grusd even had December Acquisitions' attorneys draft a proposed complaint against Karmel that he circulated to Member Plaintiffs on October 12, 2022. Grusd never filed the complaint, however, and Member Plaintiffs heard nothing further about this claimed sale to Karmel.

42.    Then, beginning in October 2022, Grusd said that he was working on a Stock Purchase Agreement with D1 Capital Partners L.P., a purported member of December Acquisitions with an alleged 50% ownership interest, under which December Acquisitions was

to sell its shares in Stripe Inc. to D1 Capital, with $133,039,900 to be distributed to the other members of December Acquisitions.

43.    On November 22, 2022, Grusd emailed December Acquisitions' members stating: "On Monday [Nov 21, 2022] I initiated the share transfer of December Acquisitions LLC shares to D1 Capital Partners the buyer of our shares..." He then sent follow-up email correspondence on December 1, 2022, stating: "I received word from Carta that all documents needed for the transaction have been signed and re in compliance with sec regulations...." And on December 7, 2022, Grusd again emailed certain Member Plaintiffs stating: "Stripe will be issuing and signing the new share certificate today and will be sending D1 for its approval and signature. These are the last two steps needed for funding..." Yet, for reasons that soon became clear Member Plaintiffs never heard anything further about this alleged sale.

**D.    Plaintiffs discover that Grusd never invested the money.  Instead, Grusd had been lying for over a year.**

44.    Member Plaintiffs started getting suspicious of Grusd when the sale of December Acquisitions' shares in Stripe to D1 was never completed, given that the sale was supposedly complete on November 4, with funds in escrow and the share and transfer approved by Carta and Stripe. So, they requested documentation from Grusd establishing the sale.

45.    In response, Grusd gave Member Plaintiffs a purported balance sheet from Silicon Valley Bank, dated December 1, 2022, and showing a balance in December Acquisitions' account of $133,039,900, the amount to be paid in the alleged D1 stock sale. (Ex. L hereto.) Upon reviewing it closely, Member Plaintiffs noticed that the bank statement had some irregularities indicating it may have been forged. Member Plaintiffs called the bank and inquired as to the balance of an account for December Acquisitions and were informed that the account in

fact had nothing in it, rather than the several million dollars shown on the statement provided by Grusd.

46.     After confirming the bank statement was forged, Member Plaintiffs confronted Grusd during a phone call on December 21, 2022. During the call, Grusd confessed to a more than year-long fraudulent scheme. Specifically, Plaintiffs learned from Grusd:

      a.  Grusd never used Member Plaintiffs' investment funds to purchase any shares in Klarna or Stripe.

      b.  Grusd never held any shares in Klarna or Stripe, despite explicit representations to certain Member Plaintiffs that he had made such purchases before Member Plaintiffs invested.

      c.  Grusd took the money from Member Plaintiffs, and intended for the Company Plaintiffs, for himself.

      d.  Grusd forged the stock certificates, investment statements, and bank statements for November and December Acquisitions to cover his lies.

47.     Grusd also lied about the existence of other investing members in November Acquisitions and December Acquisitions. Grusd told the Member Plaintiffs that an entity called D1 Capital, owned by a well-known investor, owned a significant stake in November and December Acquisitions. That too was a lie. Grusd admitted during a December 22, 2022, telephone call that D1 Capital invested no money into these LLCs. Grusd's representations that D1 Capital intended to purchase Member Plaintiffs' and other members' 50% share in December Acquisitions was also fabricated, and was intended to string Member Plaintiffs along further.

48.     Through his scheme, Grusd has stolen an amount in excess of $20 million from Member Plaintiffs.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of Section 10(b) of the Exchange Act
and Rule 10b-5(b) Promulgated Thereunder**

49.     Member Plaintiffs incorporate and reallege paragraphs 1 through 48 above as if fully set forth herein.

50.     Defendant Grusd made materially false and misleading statements as specified above, and omitted to disclose material facts, which he knew were misleading and false, in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

51.     Grusd misrepresented to Remora that he already held shares in Klarna, which he intended to transfer to November Acquisitions, prior to Remora entering the Operating Agreement and Subscription Agreement with November Acquisitions. That was a lie, that Grusd made knowingly, and Remora relied on that misrepresentation when deciding to invest in November Acquisitions.

52.     Grusd likewise represented to Patrick Buck that December Acquisitions already held shares in Stripe prior to Buck entering the Operating Agreement and Subscription Agreement with December Acquisitions. That was a lie, that Grusd made knowingly, and Patrick Buck, Thomas Buck, and Nancy Beaumont relied on that misrepresentation when deciding to invest in December Acquisitions.

53.     Grusd's materially false and misleading statements were intended to, and did, deceive Member Plaintiffs, who have suffered damages in that, in reliance on Grusd's statements that he already owned shares in Klarna and Stripe before their investments in November Acquisitions and December Acquisitions, they entered Subscription Agreements to purchase an ownership interest in those shares, and/or to purchase additional shares. Plaintiffs would not have

entered Subscription Agreements with and invested in November and December Acquisitions if they had been aware that neither Grusd nor those entities yet held any ownership interest in Klarna or Stripe.

54.     Grusd's material misrepresentations and/or omissions were done knowingly and for the purpose and effect of concealing that he did not own shares in Klarna or Stripe and had no intent of purchasing any such investments.

55.     The Member Plaintiffs' Subscription Agreements with November Acquisitions and December Acquisitions constitute the purchase of a security, as they are investment contracts under Section 3(a)(10) of the Exchange Act.

56.     As a direct and proximate result of Grusd's wrongful conduct, Member Plaintiffs suffered damages in connection with their investment in November Acquisitions and December Acquisitions.

## COUNT II
### Fraudulent Inducement

57.     Member Plaintiffs incorporate and reallege paragraphs 1 through 48 above as if fully set forth herein.

58.     Defendant Grusd committed fraud in the inducement by knowingly making misrepresentations of or omitting material facts, with the intent to induce Member Plaintiffs based on the misrepresentations. These misrepresentations and omissions include, but are not limited to, those set forth in paragraphs 23 through 48 above.

59.     Specifically, Member Plaintiffs relied on Grusd's misrepresentations that he or the Company Plaintiffs already owned shares in Klarna and Stripe when entering into the Agreements, and also relies on Grusd's ongoing fraudulent scheme of forging documents that falsely showed he had used their investment funds to purchase shares in Klarna and Stripe, as

promised. Without those misrepresentations, which Grusd made knowingly, the Member

Plaintiffs would not have sat idly by while Grusd stole millions from them. Instead, they would

have demanded a return of their investment funds or that Grusd actually use the funds to

purchase the agreed upon shares in Klarna and Stripe.

60.     The misrepresentations and/or omissions were false and misleading at the time

they were made.

61.     Defendant made those misrepresentations and/or omissions with knowledge of

their falsity, or recklessly without regard for their truthfulness, with the intent to deceive Member

Plaintiffs, and with the intent to induce Member Plaintiffs to enter into the Operating and

Subscription Agreements, and later to induce Member Plaintiffs to refrain from removing their

substantial monetary investments from November Acquisitions and December Acquisitions.

62.     Member Plaintiffs reasonably relied to their detriment on Defendant's

misrepresentations regarding the purchase of shares in Klarna and Stripe Inc., in entering the

Subscription Agreements and Operating Agreements, and in refraining from taking action to

demand refund of their investment money or that Defendant in fact make the required share

purchases, and suffered damages as a result.

63.     As a direct and proximate result of these fraudulent actions, Member Plaintiffs

have suffered compensable harm and are entitled to recover actual and punitive damages.

## COUNT III

### Breach of fiduciary duty

64.     Member Plaintiffs and Company Plaintiffs incorporate and reallege paragraphs 1

through 48 above as if fully set forth herein.

65.     Plaintiff Remora is a member of November Acquisitions, a limited liability

company organized under the laws of Delaware.

66.     Plaintiffs Bad Gremlin, Patrick Buck, Thomas Buck, and Nancy Beaumont, are members of December Acquisitions, a limited liability company organized under the laws of Delaware.

67.     Defendant Grusd held himself out as a member of both November Acquisitions and December Acquisitions, and was appointed as the Managing Member of both.

68.     At all relevant times, as the Managing Member of November Acquisitions and December Acquisitions, Grusd owed Plaintiffs the fiduciary duties of loyalty, good faith, and care, because under Delaware law, which governs here, in the absence of a contrary provision in the LLC agreement, LLC managers and members owe traditional fiduciary duties to each other and to the company.

69.     Grusd admits that he stole all investment funds belonging to the Company Plaintiffs for his personal use. This plainly violates that duties of loyalty, good faith, and care owed to all Plaintiffs.

70.     Grusd's breach of his fiduciary duties proximately or directly caused Member Plaintiffs monetary damages by depriving them of their investment funds without the providing the promised investments.

71.     As a further result of Defendant's misconduct, Member Plaintiffs and the Company Plaintiffs have suffered, and will continue to suffer, irreparable harm in that they cannot trace the expenditure or location of the investment funds stolen by Grusd.

72.     Accordingly, as a result of Defendant's misconduct, Member Plaintiffs and Company Plaintiffs have also suffered harm for which no adequate remedy at law exists.

73.     The Member Plaintiffs and Company Plaintiffs require an accounting because of Grusd's theft of all funds in the Company Plaintiffs' accounts.

## COUNT IV

### Breach of contract
### (November Acquisitions)

74.     Plaintiffs Remora and November Acquisitions incorporate and reallege

paragraphs 1 through 48 above as if fully set forth herein.

75.     Remora and November Acquisitions entered into the valid and enforceable

Operating Agreement and Subscription Agreement (collectively the "November Agreements"),

each of which consisted of an offer, acceptance, consideration, and definite and certain terms.

76.     Remora performed all of its obligations under the November Agreements.

77.     In accordance with the terms of the November Agreements, Grusd had the

following obligations, among other things:

    a.  Purchase an ownership interest in Klarna using Remora's invested $10 million in
funds (*see generally* Ex. C);

    b.  act on behalf of the Company to further its purpose, including "to (i) acquire,
hold, own, and, when and if applicable, sell or otherwise transfer the Investment"
(Ex. A ¶ 3.01(A));

    c.  "[m]ake interim investments in appropriate banking or investment accounts;
provided, however, that the members shall have a fiduciary responsibility for the
safe-keeping and use of all funds and assets of the Company" (*id.* ¶ 3.02(J));

    d.  as the Managing Member Grusd had "the authority, discretion, obligation and
responsibility to manage and control the affairs of the Company to the best of his
ability, (ii) shall use his reasonable best efforts to carry out the business of the
Company, and (iii) shall oversee the day-to-day affairs of the Company and shall
make all decisions and take all actions with respect thereto" (*id.* ¶ 6.01(A));

e.  as the Managing Member, not "to perform (i) any act in violation of any applicable law or regulation thereunder, (ii) any act in contravention of this Agreement or failing to do any act required by this Agreement, (iii) any act which would make it impossible to carry on the ordinary business of the Company" (*id.* ¶ 6.03);

f.  as the Managing Member, to "maintain at the office of the Company full and accurate books of the Company showing all receipts and expenditures, assets and liabilities, profits and losses, names and current addresses of Members, and all other records necessary for recording the Company's business and affairs" (*id.* ¶ 7.01); and,

g.  as the Managing Member Grusd had "total fiduciary responsibility for the safekeeping and use of all funds and assets of the Company, whether or not in his direct or indirect possession or control. The funds of the Company shall not be commingled with the funds of any other Person, and no Member shall employ such funds in any manner except for the benefit of the Company. All funds of the Company not otherwise invested shall be deposited in one or more accounts maintained in such banking institutions as the Managing Member shall determine, and withdrawals shall be made only in the regular course of Company business by the Managing Member." (*Id.* ¶ 7.04.)

78.    By his afore mentioned actions, Grusd breached the above terms of the November Agreements.

79.    Remora has been damaged as a result of Defendant's breach of the terms of the November Agreements, in that Remora has lost its ten million dollar investment without

receiving any of the promised consideration. November Acquisitions has been damaged in that

no investments were ever made on behalf of the Company.

## COUNT V
### Breach of contract
### (December Acquisitions)

80.     Plaintiffs Bad Gremlin, Patrick Buck, Thomas Buck, Nancy Beaumont, and

December Acquisitions incorporate and reallege paragraphs 1 through 48 above as if fully set

forth herein.

81.     Each of Plaintiffs Bad Gremlin, Patrick Buck, Thomas Buck, and Nancy

Beaumont entered into the valid and enforceable Operating Agreement and Subscription

Agreement with December Acquisitions (collectively the "December Agreements"), each of

which consisted of an offer, acceptance, consideration, and definite and certain terms.

82.     Each of these Plaintiffs performed all obligations under the December

Agreements.

83.     In accordance with the terms of the December Agreements, Grusd was obligated

to purchase an ownership interest in Stripe using Plaintiffs' invested funds (Exs. D–H), in

addition to each of the obligations listed in paragraph 77 above (Ex. B, ¶¶ 3.01(A), 3.02(J),

6.01(A), 6.03, 7.01, 7.04).

84.     Defendant failed to do so, instead taking the money for his personal use, and by

his afore mentioned actions, Grusd breached the above terms of the December Agreements.

85.     Plaintiffs Bad Gremlin, Patrick Buck, Thomas Buck, and Nancy Beaumont have

been damaged as a result of Defendant's breach of the December Agreements, in that they have

lost the following investments without receiving any of the promised consideration: Bad

Gremlin, $10,000,000; Patrick Buck, $300,000; Thomas Buck, $300,000; and Nancy Beaumont,

$300,000. December Acquisitions has been damaged in that no investments were ever made on behalf of the Company.

## COUNT VI

### Breach of Implied Covenant of Good Faith and Fair Dealing

86.     All Plaintiffs incorporate and reallege paragraphs 1 through 48 above as if fully set forth herein.

87.     As detailed above, the Parties entered into valid and enforceable contracts. Under Delaware law, the conduct of each party to a contract is subject to the implied covenant of good faith and fair dealing under which Defendant Respondents had duties to exercise their contractual obligations to Plaintiffs with due and reasonable.

88.     Defendant breached the implied covenant of good faith and fair dealing by engaging in fraudulent and deceptive behavior that deprived both the Member Plaintiffs and Company Plaintiffs from receiving the benefit of the Agreements, due to his bad faith conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter an order:

1.  Entering injunctive relief in the manner of freezing the remaining assets at November Acquisitions and December Acquisitions;

2.  Ordering a full accounting of November Acquisitions and December Acquisitions;

3.  Enjoining Defendant from taking any action on behalf of November Acquisitions or December Acquisitions;

4.  Requiring Defendant to pay Plaintiffs compensatory damages, punitive damages, and attorneys' fees;

5.  Granting such other relief as the Court considers just.

Dated:  December 30, 2022                    Respectfully submitted,


  /s/ William E. Vita
      William E. Vita (#1963461)


William E. Vita (#1963461)
SHOOK, HARDY & BACON L.L.P.
1325 Avenue of the Americas, 28th Floor
New York, NY  10019
Tel: (212) 989-8844
wvita@shb.com

Gary M. Miller (*pro hac vice forthcoming*)
Amy Y. Cho (*pro hac vice forthcoming*)
Tara D. Kennedy (*pro hac vice forthcoming*)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Tel:  (312) 704-7700
gmiller@shb.com
acho@shb.com
tkennedy@shb.com

***Attorneys for Plaintiffs***

## **VERIFICATION**

Under penalties as provided by law, I certify that I am the Manager of Bad Gremlin LLC and am authorized to sign this Verification on behalf of Bad Gremlin LLC.  I have read the foregoing Verified Complaint and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

Dated:  December 30, 2022

John S. Stafford III, Manager
Bad Gremlin LLC

## <u>VERIFICATION</u>

Under penalties as provided by law, I certify that I am the Manager of Remora Ventures LLC and am authorized to sign this Verification on behalf of Remora Ventures LLC.  I have read the foregoing Verified Complaint and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

Dated:  December 30, 2022

_____
John S. Stafford III, Manager
Remora Ventures LLC

## **VERIFICATION**

Under penalties as provided by law, I certify that I have read the foregoing Verified Complaint and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

Dated:  December 30, 2022

_____
Patrick Buck

## VERIFICATION

Under penalties as provided by law, I certify that I have read the foregoing Verified Complaint and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same be true.

Dated:  December 30, 2022

Thomas Buck

## VERIFICATION

Under penalties as provided by law, I certify that I have read the foregoing Verified

Complaint and the statements set forth therein are true and correct, except as to matters therein

stated to be on information and belief, and as to such matters I certify that I believe the same to

be true.

Dated:  December 30, 2022

_____

Nancy Beaumont

## VERIFICATION

Under penalties as provided by law, I certify that I am the Manager of Remora Ventures LLC. Remora Ventures LLC is the Managing Member of November Acquisitions SPV LLC. Accordingly, I am authorized to sign this Verification on behalf of November Acquisitions SPV LLC. I have read the foregoing Verified Complaint and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

Dated:  December 30, 2022

_____

John S. Stafford III, Manager
Remora Ventures LLC

## **VERIFICATION**

Under penalties as provided by law, I certify that I am the Manager of Bad Gremlin LLC.

Bad Gremlin LLC is the Managing Member of December Acquisitions SPV LLC.  Accordingly,

I am authorized to sign this Verification on behalf of December Acquisitions SPV LLC.  I have

read the foregoing Verified Complaint and the statements set forth therein are true and correct,

except as to matters therein stated to be on information and belief, and as to such matters I certify

that I believe the same to be true.

Dated:  December 30, 2022

_____
John S. Stafford III, Manager
Bad Gremlin LLC

*Bad Gremlin LLC, et al. v. Grusd*

**INDEX OF EXHIBITS TO COMPLAINT**

| <u>Ex.</u> | <u>Document</u> | <u>Date</u> |
|---|---|---|
| A | Operating Agreement of November Acquisitions SPV LLC | 11/17/21 |
| B | Operating Agreement of December Acquisitions SPV LLC | 12/26/21 |
| C | Subscription Agreement – November Acquisitions SPV LLC and Remora Ventures LLC | 11/17/21 |
| D | Subscription Agreement – December Acquisitions SPV LLC and Bad Gremlin LLC | 2/7/22 |
| E | Subscription Agreement – December Acquisitions SPV LLC and Bad Gremlin LLC | 4/25/22 |
| F | Subscription Agreement – December Acquisitions SPV LLC and Patrick Buck | 5/9/22 |
| G | Subscription Agreement – December Acquisitions SPV LLC and Thomas J. Buck | 5/9/22 |
| H | Subscription Agreement – December Acquisitions SPV LLC and Nancy Beaumont | 5/9/22 |
| I | Amended and Restated Operating Agreement of December Acquisitions SPV LLC | 12/15/22 |
| J | Klarna Bank AB Stock Certificate No. CS-38 | 11/29/21 |
| K | Stripe Inc. Stock Certificate No. CS-12 | 1/21/22 |
| L | svb Private Bank statement for December Acquisitions SPV LLC for 11/1/22 through 11/30/22 | 12/1/22 |